# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                                        Case No. 05-CR-279

SAMUEL OROZCO-MARTINEZ,

    Defendant.

# RECOMMENDATION TO
# UNITED STATES DISTRICT JUDGE J.P. STADTMUELLER

On October 27, 2005, United States Magistrate Judge Aaron E. Goodstein issued a criminal complaint against defendant Samuel Orozco-Martinez, charging him with violating 26 U.S.C. § 5861(d) and 18 U.S.C. § 921(6). Thereafter, on November 15, 2005, a federal grand jury sitting in this district returned a one-count indictment against the defendant, charging him with knowingly possessing a sawed-off shotgun with a barrel length of less than 18 inches which was not registered to him in the National Firearms Registration and Transfer Record, a violation of 26 U.S.C. § 5861(d) and 5871.

On November 17, 2005, the defendant appeared before this court for arraignment, entering a plea of not guilty. Pursuant to the pretrial scheduling order issued at that time, the defendant has filed a motion to suppress evidence (Docket #19) and a motion to suppress statements. (Docket #20). The motions will be addressed herein.

On January 3, 2006, the court held a hearing on the defendant's motions. One witness testified, but the hearing had to be continued due to the illness of a second witness for the

government. The continued hearing took place on January 5, 2006. The following persons testified on behalf of the government at the hearing: Senior Special Agent Stephen Maltby of the United States Department of Homeland Security, Immigration and Customs Enforcement and Milwaukee Police Department Officer Thomas Obregon. The defendant testified on his own behalf. Based on the testimony presented at the hearing, the court now makes the following findings of fact.

## **FINDINGS OF FACT**

On August 24, 2005, at approximately 9:00 a.m., Milwaukee Police Department Officer Thomas Obregon conducted an interview with the defendant. This interview took place in the Police Administration Building in Milwaukee, Wisconsin, in a small interview room which contained two chairs and a table. Although the defendant was handcuffed when he came into the interview room, the handcuffs were removed during the interview. The interview lasted approximately two and a half hours. During the course of the interview, the defendant was provided a bottle of water and was given a bathroom break.

According to Officer Obregon, prior to the beginning of the interview, he advised the defendant of his Miranda[1] rights in English, as well as in Spanish. He testified that he spoke to the defendant in both English and Spanish, but that the defendant told him that he preferred to speak in Spanish. The defendant did not tell Officer Obregon that he did not understand English. Officer Obregon is fluent in Spanish.

Officer Obregon testified that he did not read the defendant his Miranda rights from a card, but advised the defendant of all of his rights. Officer Obregon did not recall whether he

---

[1] Miranda v. Arizona, 384 U.S. 363 (1966).

- 2 -

had confirmed that he had properly given the defendant his rights. After he advised the defendant of his rights, Officer Obregon testified that he interviewed the defendant, wrote out the defendant's statement, read the statement in Spanish to the defendant and asked the defendant to sign it. The statement was not a verbatim statement. Officer Obregon testified that the defendant said he did not want to sign the statement because he understood his rights and he knew that he did not have to sign it. The defendant was shown a photograph of himself with two firearms during the course of the interview.

The defendant and Officer Obregon initialed the statement at the end of the first paragraph which stated in English that the defendant had been advised of his rights, wished to make a statement, and wanted to speak in Spanish. The statement also bears the initials of Officer Obregon and the defendant near the end of the two-page statement. During the interview, the defendant was not threatened or forced to make a statement. He was calm and relaxed.

Officer Obregon testified that he had about six prior contacts with the defendant in the community. During those contacts, he stated that he conversed with the defendant in both English and Spanish.

The testimony of the defendant was significantly different from the testimony of Officer Obregon in many respects. The defendant testified that Officer Obregon did not tell him that he had the right to remain silent, that he had the right to an attorney, that an attorney would be appointed for him if he could not afford one or that he could stop the interview at any time. He testified that Officer Obregan did not advise him of any rights.

According to the defendant, Officer Obregon came and woke up the defendant, took him to the interview room and began talking to him about a shotgun. The defendant said that

Officer Obregon told him that he had gotten the shotgun from a Brown Pride member at that member's residence. Brown Pride is the name of a gang. The defendant said Officer Obregon also told him that he was not going to charge that person; rather, he was going to charge the defendant.

The defendant testified that his Miranda rights had never been explained to him before and he did not know that he did not have to speak Officer Obregon. He had never had a class where he learned about his Miranda rights or about the criminal justice system. The defendant testified that none of the conversation with Officer Obregon took place in English. Spanish is the defendant's first language and he testified that he understands "very little" English. According to the defendant, he speaks in Spanish all of the time. He testified that if someone had told him his rights in English, he would not have understood those rights.

The defendant also testified that he could not read the statement which was written in English. He said that Officer Obregon asked him to sign the statement, but the defendant did not know what it was for. He testified that the statement was never translated into Spanish. The defendant also said he was going to sign the statement, but then Officer Obregon said he only had to initial it.

The defendant said that Officer Obregon treated him well during the interview and did not yell at him. However, the defendant said that Officer Obregon told him that he was going to deport him.

The defendant, who was born in the United States, attended Pulaski High School in Milwaukee, Wisconsin for approximately three months. During that time he was enrolled in two English classes; the remainder of his classes were conducted in Spanish. He was not in special education classes. Previously, the defendant had told the United States pretrial

- 4 -

services officer that he had completed the ninth grade at Pulaski High School. The defendant attended elementary school in Mexico.

The defendant has a Wisconsin driver's license, but he took the written driver's test in Spanish. The defendant further testified that he has worked in construction for several companies, including A&B Drywall, for about four years. He testified that he did not know his bosses' names or the names of the other companies he worked for. One company that he worked for withheld payroll taxes and he filed tax returns in 2003. The defendant was often paid in cash.

According to the defendant, he had been arrested on four prior occasions, but was never advised of his rights, nor was he questioned in the way that Officer Obregon questioned him on August 24, 2005. The defendant testified that this was the first time that Officer Obregon was involved with the defendant.

The defendant also testified that an officer known as "Tabaco," who does not speak Spanish, was also in the interview room and showed him the photograph of the defendant holding two weapons. The defendant denied saying anything when he was shown the photograph. The defendant acknowledged that he heard Officer Obregon talk to Officer "Tabaco" in English about getting water for the defendant. The defendant explained that he was able to understand words in English like "water."

Contrary to Officer Obregon's testimony and the statement of the interview, the defendant denied telling Officer Obregon that he had purchased the Remington shotgun from a white male for $200.00 and that the shotgun was the same one as depicted in the photograph. He also denied telling Officer Obregon that the photograph was taken at his home. The defendant denied telling Officer Obregon that the shotgun was sawed off, but that

- 5 -

he did not cut it. The defendant testified that he responded in English when one of the deputy United States marshal's asked him in English what he had done with the stud or earring he had been wearing. The defendant also testified that he has spoken only in Spanish during the time he has been in jail.

The defendant testified at the hearing that the affidavit submitted in support of his motion to suppress his statement contains his signature. The affidavit is written in English and was filed with the court on December 19, 2005. He further testified that he had no idea what the document was and that he had never seen both pages of the document before. The defendant testified that he did not know what the statements meant. The defendant also did not remember where he signed the affidavit which was signed under oath. See Exh. 2.

Special Agent Stephen Maltby provided the affidavit in support of a search warrant for the defendant's residence at 2331 S. 9th Street, Milwaukee, Wisconsin. According to Agent Maltby, none of the information in the affidavit was false or was made with reckless disregard for the truth. According to Special Agent Maltby, no material fact was omitted from the affidavit.

With respect to the defendant's legal status, Special Agent Maltby explained that, as stated in the affidavit, he had conducted computerized searches of Immigration and Customs Enforcement and other law enforcement data bases. Based on the searches, he had determined that the defendant was born in Mexico City, Mexico and had no lawful immigration status or permission to be present in the United States. Special Agent Maltby further testified that he learned later that the defendant may have been born in the United States. Prior to the search warrant, he had no indication that the defendant was born in the United States.

Special Agent Maltby also testified that the information that the shotgun was purchased by the defendant and was registered in his name was obtained from Officer Obregon.

**MOTION TO SUPPRESS EVIDENCE**

The defendant moves to suppress all physical evidence and statements obtained as a result of the search of his residence at 2331 S. 9th Street in Milwaukee, Wisconsin, on August 4, 2005. The defendant asserts in conclusory fashion that Senior Special Agent Maltby intentionally, or with reckless disregard for the truth, made false statements in, and omitted material facts from, his affidavit in support of the search warrant. As a result, the defendant maintains that the affidavit fails to establish probable cause for the search warrant. The government opposes the motion.

In Franks v. Delaware, 438 U.S. 154 (1978), the Court mandated that a search warrant could be voided if a movant establishes by a preponderance of the evidence that

1) A factual statement made in an affidavit supporting a warrant is false;

2) The affiant made the false statement either knowingly and intentionally or with reckless disregard for the truth; and,

3) Without the false statement, the remainder of the affidavit is insufficient to establish probable cause.

Franks v. Delaware, 438 U.S. at 155-56; United States v. A Residence Located at 218 Third Street, New Glarus, Wis, 805 F.2d 256, 258 (7th Cir. 1986); United States v. Radtke, 799 F.2d 298, 309 (7th Cir. 1986). The focus of a Franks analysis is on the veracity of the affiant. See United States v. Radtke, 799 F.2d at 309.

"Franks makes clear that an affidavit supporting an application for a search warrant is presumed to be valid." United States v. Pritchard, 745 F.2d 1112, 1116 (7th Cir. 1984). In certain limited situations, when a defendant contends there has been a violation of the Fourth

- 7 -

Amendment under Franks due to the intentional or reckless submission of false statements in a warrant affidavit, a defendant may obtain a hearing to present evidence to challenge the warrant affidavit's truth. United States v. Skinner, 972 F.2d 171, 177 (7th Cir. 1992).

To obtain an evidentiary hearing, "the defendant must make a 'substantial preliminary showing' that the affiant has intentionally or recklessly included a false statement in the warrant affidavit, and the false statement is material, in the sense that it is necessary to find probable cause." Skinner, 972 F.2d at 177 (emphasis in original) (quoting United States v. Pace, 898 F.2d 1218, 1226 [7th Cir.1990]).

An affiant acts with reckless disregard for the truth when he 'in fact entertains serious doubts as to the truth of his allegations.'" United States v. Henry, 933 F.2d 553, 557 (7th Cir. 1991). Reckless disregard for the truth may also be proved inferentially "from circumstances evincing 'obvious reasons to doubt the veracity' of the allegations." 218 Third Street, 805 F.2d at 258.

In this case, the defendant submitted an affidavit in support of his motion in which he denies certain assertions in the search warrant affidavit. Specifically, he denies telling Milwaukee police officers that he purchased a Remington model 870 shotgun which was at his residence and that any second shotgun did not belong to him. According to the search warrant affidavit, Agent Maltby obtained this information from Milwaukee police officers. Although the warrant affidavit states that Agent Maltby determined after checking Immigration and Customs enforcement and other data bases that the defendant was born in Mexico, the defendant avers that he is a United States citizen.

The information provided by the defendant does not call into question the veracity of Special Agent Maltby. He has not shown that the challenged statements were false.

Moreover, the defendant has not made a substantial preliminary showing that Agent Maltby acted intentionally or with reckless disregard for the truth in his search warrant affidavit. Therefore, he has not established a basis for an evidentiary hearing.

Nonetheless, Senior Special Agent Maltby was permitted to testify at the hearing. He testified that he checked the Immigration and Customs Enforcement database, as well as other law enforcement databases, before he sought the search warrant. Based on that investigation, he determined that the defendant was born in Mexico and had no lawful immigration status. He only learned after the search warrant was issued that the defendant possibly was born in the United States. Special Agent Maltby also testified that no material facts were omitted from, or false information included in, the search warrant affidavit.

Based on the record before it, the court concludes that none of the grounds raised by the defendant in support of his motion to suppress physical evidence provide a basis for the relief sought. Accordingly, the court will recommend that his motion to suppress physical evidence be denied.

## **MOTION TO SUPPRESS STATEMENT**

In moving to suppress his statement given to Officer Obregon, the defendant asserts that the statement was not made pursuant to a knowing and intentional waiver of his rights, in violation of the Fifth Amendment to the United States Constitution and Miranda v. Arizona, 384 U.S. 436 (1966).

The Fifth Amendment privilege against self-incrimination and the right to counsel require the police to follow certain procedural safeguards during custodial interrogations of a suspect. Miranda v. Arizona, 384 U.S. 436 (1966). Miranda deals only with the "admissibility of statements obtained from an individual who is subjected to custodial police

interrogation." United States ex rel. Link v. Lane, 811 F.2d 1166, 1170 (7th Cir. 1987) (citing Miranda v. Arizona, 384 U.S. 436, 439 [1966]).

In this case, there is no dispute that the defendant was in custody at the time of the interview. Additionally, there is no evidence that the statement which the defendant seeks to suppress was the result of his will being overborne. See Schneckloth v. Bustamonte, 412 U.S. 218, 226 (1973) (Court detailed the factors to be considered when evaluating whether a defendant's "will was overborne" in the giving of statements).

The government has the burden of establishing by a preponderance of the evidence that a defendant's waiver of Miranda rights was knowing and voluntary. Colorado v. Connelly, 479 U.S. 157, 168 (1986). In Moran v. Burbine, 475 U.S. 412, 421 (1986) the United States Supreme Court set forth a two pronged inquiry for determination of whether a waiver of rights is made voluntarily, knowingly, and intelligently:

1) [T]he relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice, rather than intimidation, coercion, or deception; and,

2) The waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it.

A court may properly conclude that the Miranda rights have been waived by a defendant only if the "totality of the circumstances surrounding the interrogation" reveals both an uncoerced choice and the requisite level of comprehension. Moran, 475 U.S. at 421.

The issue before the court is whether the defendant properly was advised of his Miranda rights and knowingly and voluntarily waived those rights. The testimony of the defendant and the testimony Officer Obregon are diametrically opposed on critical issues. Therefore, the court must assess the credibility of the witnesses. On one hand, Officer

Obregon, who is bilingual, testified that he advised the defendant of his rights in both Spanish and English and conducted the interview of the defendant in Spanish at the defendant's request. He did not read from an "Advice of Rights" card, but was confident that he had advised the defendant of all of his Miranda rights. He also testified that, after interviewing the defendant, he wrote out the defendant's statement and then read the statement to the defendant in Spanish.

On the other hand, the defendant asserts that he was never read his rights, nor did he know what was in the statement written by Officer Obregon since he does not read English. He testified that Officer Obregon did not read the statement to him in Spanish. Although he initialed the written statement, the defendant maintained that he did not know what he was initialing. In addition, the defendant denied making most of the statements attributed to him by Officer Obregon in the written statement.

During his testimony, the defendant stated that he spoke "very little" English, but said that he could understand words in English like "water." However, the defendant understood and responded in English when a deputy United States marshal asked him what he had done with the stud or earring that he had been wearing.

Another factor the court has considered in making its credibility determination is the defendant's testimony that he had no idea what was in the affidavit he signed and submitted to the court in support of his request for an evidentiary hearing and his motion to suppress his statement. He acknowledged that he signed the affidavit, which was made under oath, but he said that he had never seen both pages of the affidavit before the hearing. Moreover, he could not remember where he signed the affidavit, even though it was signed about two weeks before the hearing.

- 11 -

Case 2:05-cr-00279-LA   Filed 01/09/06   Page 11 of 13   Document 26

Accordingly, in considering the testimony of the defendant and Officer Obregon, the court finds that Officer Obregon's testimony is the more credible. The court finds that the defendant was read his Miranda rights in Spanish by Officer Obregon prior to any questioning on August 24, 2005. The defendant testified that Officer Obregon did not yell at him and treated him well during the interview. Officer Obregon testified that he did not threaten or coerce the defendant. Although the defendant testified that Officer Obregon told him that he could have the defendant deported, even if true, the defendant, in all likelihood, would not find this comment to be threatening. The defendant knew that he was a United States citizen and, thus, not subject to deportation.

Upon due consideration, the court concludes that the government has met its burden of establishing that the defendant was advised of his Miranda rights, that he waived those rights and that such waiver was made knowingly and voluntarily. See Colorado v. Connelly, 479 U.S. at 168. Thus, the court will recommend that the defendant's motion to suppress his statement be denied.

In sum, in light of the foregoing, this court will recommend that the defendant's motion to suppress evidence (Docket #19) and his motion to suppress statements (Docket #20) be **denied**.

## ORDER

**NOW, THEREFORE, IT IS RECOMMENDED** that defendant's motion to suppress evidence (Docket #19) be **denied**.

**IT IS FURTHER RECOMMENDED** that defendant's motion to suppress statements (Docket #20) be **denied**.

- 12 -

Your attention is directed to 28 U.S.C. § 636(b)(1)(A) and General Local Rule 72.3 (E.D. Wis.), whereby written objections to any recommendation herein or part thereof may be filed within five days[2] of service of this order. Objections are to be filed in accordance with the Eastern District of Wisconsin's electronic case filing procedures. Courtesy paper copies of any objections shall be sent directly to the chambers of the district judge assigned to the case. Failure to file a timely objection with the district court shall result in a waiver of your right to appeal.

Dated at Milwaukee, Wisconsin, this 9th day of January, 2006.

BY THE COURT:

s/ Patricia J. Gorence
PATRICIA J. GORENCE
United States Magistrate Judge

---

[2] During a telephone conference on December 7, 2005, the parties agreed to shorten the time to five days to file any objections to this court's recommendation on the pending motions.